IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GERALD JONES,

    Petitioner,                      No. CIV S-06-1098 LKK KJM P

    vs.

DERRAL ADAMS, Warden,

    Respondent.                  FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner, a state prison inmate proceeding pro se, challenges his Sacramento County conviction for first degree murder along with the special findings made by the jury.

I. Background

        Petitioner and co-defendants Craver and Shelmire were jointly charged in an amended information filed on July 21, 2003 with first-degree murder of Justin Roberts, as well as robbery murder and burglary-murder special circumstances; it was further alleged that a principal was armed with a firearm during the commission of the offense. CT 56-57. Although the defendants were tried together, three juries were impaneled. See RT 71, 91-93.

        The jury returned a guilty verdict against petitioner for first-degree murder. The jury also found that the burglary-murder special circumstance and the firearm allegation were true, but rejected the robbery-murder special circumstance. RT 522-524.

Petitioner has not raised any intrinsic challenge to the facts as found by the state court. Therefore, after a review of the record, this court accepts the California Third District Court of Appeal's statement of facts and adopts it for the purposes of this petition:

> The victim, Justin Roberts, was allowed to grow medical marijuana at his residence. Prior to September 14, 2001, he had been growing marijuana on the back patio of his Sacramento apartment for about two months. Roberts lived with his girlfriend, Sally Lewis; their two children; Lewis's brother, Levi Lewis; and their roommate, Eric Aguiar, who slept on their couch.
>
> On September 13, 2001, codefendant Andre Craver called defendant and told him to expect a visit and to "be ready at night." At some point that day, Craver told defendant that he had a "lick" or a "gig." The word, "lick," meant a robbery. Craver stated that he and codefendant Eric Shelmire knew where to go to get marijuana. Craver told defendant there was a "nice amount of weed" at the location and asked if he wanted to help out. Defendant agreed to go along. Later that night, Craver and Shelmire arrived at defendant's residence. Craver said, "'Let's go do this,'" and introduced defendant to Shelmire. Defendant dressed himself entirely in black, including shoes, pants, shirt, sweatshirt, and beanie. Craver was wearing all black, including a ski mask that covered his whole face with the eyes and nose cut out. Shelmire also was wearing all black, including a beanie and a sweatshirt with a hood. Defendant admitted they wore black because it was "the best color not to be seen."
>
> Craver and Shelmire traveled in one car and defendant followed in his own car. They arrived at an apartment complex off of Auburn Boulevard. The three men entered the complex on foot. Shelmire carried a two-foot-wide duffel bag and opened a security gate by entering the correct code on a keypad. The three men walked to Roberts's apartment and noticed that a window was open. Defendant saw Craver pull a handgun from his waistband. Craver slid the window fully open and entered the apartment through the window. Defendant followed directly behind Craver. The interior of the apartment was almost completely dark.
>
> Aguiar testified that an unknown intruder landed on top of him as he slept on the couch near the window. The intruder struck Aguiar on the head with an unknown object, and the two began to fight on the couch. During the struggle, Aguiar grabbed the intruder by the neck, pulled him close, and felt for his nose. Aguiar followed the intruder's nose to his eye and shoved his finger into the intruder's eye. When he did this, the intruder started screaming, "'I need help.'"

/////

2

After the intruder yelled for help, Roberts emerged from his bedroom and ran down the hallway. He turned on the hallway light switch. Almost immediately thereafter, three gunshots went off in quick succession. No words were spoken when the gun was fired. Immediately after the shots were fired, the intruders left the apartment through the window. Defendant ran to his car and noticed that Craver's car was already gone. Defendant got into his car and drove home.

Following the gunshots, Aguiar began to collect his thoughts. Seeing that the bathroom light was on, he knocked on the closed door and got no response. The door was obstructed and blood was visible on the bathroom floor. Aguiar forced open the door and found Roberts laying on the floor bleeding. Roberts died as a result of a gunshot wound to the chest.

Within an hour of the struggle, a tissue sample was taken from beneath the fingernail of the finger that Aguiar pushed into the intruder's eye. The DNA in the tissue sample matched DNA obtained from Craver at the jail.

Lodged Doc. No. 3 at 2-4 (Opinion of Third District Court of Appeal; internal footnotes omitted).

II. Standards Under The AEDPA

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA"). See Ramirez v. Castro, 365 F.3d 755, 773-75 (9th Cir. 2004) (Ninth Circuit affirmed lower court's grant of habeas relief under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his Eighth

Amendment rights and that § 2254(d) does not preclude relief); see also Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and therefore did not address the merits of petitioner's Eighth Amendment claim).[1] Courts are not required to address the merits of a particular claim, but may simply deny a habeas application on the ground that relief is precluded by 28 U.S.C. § 2254(d). Lockyer, 538 U.S. at 71 (overruling Van Tran v. Lindsey, 212 F.3d 1143, 1154-55 (9th Cir. 2000) in which the Ninth Circuit required district courts to review state court decisions for error before determining whether relief is precluded by § 2254(d)). It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d). See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002). A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply

/////

---

[1] In Bell v. Jarvis, 236 F.3d 149, 162 (4th Cir. 2000), the Fourth Circuit Court of Appeals held in a § 2254 action that "any independent opinions we offer on the merits of constitutional claims will have no determinative effect in the case before us . . . At best, it is constitutional dicta." However, to the extent Bell stands for the proposition that a § 2254 petitioner may obtain relief simply by showing that § 2254(d) does not preclude his claim, this court disagrees. Title 28 U.S.C. § 2254(a) still requires that a habeas petitioner show that he is in custody in violation of the Constitution before he or she may obtain habeas relief. See Lockyer, 538 U.S. at 70-71; Ramirez, 365 F.3d at 773-75.

4

fails to cite or fails to indicate an awareness of federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S. 919 (2003). Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). In other words, the court assumes the state court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law.

"Clearly established" federal law is that determined by the Supreme Court. Arredondo v. Ortiz, 365 F.3d 778, 782-83 (9th Cir. 2004). At the same time, it is appropriate to look to lower federal court decisions as persuasive authority in determining what law has been "clearly established" and the reasonableness of a particular application of that law. Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999); Clark v. Murphy, 331 F.3d 1062 (9th Cir. 2003), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63 (2003); cf. Arredondo, 365 F.3d at 782-83 (noting that reliance on Ninth Circuit or other authority outside bounds of Supreme Court precedent is misplaced).

III. Sufficiency Of The Evidence To Sustain Special Circumstance Finding

Petitioner argues that evidence at trial was insufficient to support a finding of the burglary-murder special circumstance. Pet. at 5 (ground one). The clearly established federal law governing sufficiency of the evidence challenges on federal habeas review is the Jackson v. Virginia standard. See Jackson v. Virginia, 443 U.S. 307, 317-20 (1979). The state court of appeal expressly applied this standard in reviewing petitioner's sufficiency claim. See Lodged

Doc. No. 3 at 5-6. Thus, the question before this court is whether the state court's application of the Jackson v. Virginia standard was objectively unreasonable. See, e.g., Juan H. v. Allen, 408 F.3d 1262, 1274-75 (9th Cir. 2005) ("unreasonable application" standard applies to insufficient evidence claim).

The inquiry under Jackson is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319. Furthermore, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326; see also Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992). The standard is applied with "explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n.16; Juan H., 408 F.3d at 1275-76.

The burglary-murder special circumstances rule is codified in Penal Code § 190.2, which reads in pertinent part as follows:[2]

> a) The penalty for a defendant who is found guilty of murder in the first degree is death or imprisonment in the state prison for life without the possibility of parole if one or more of the following special circumstances has been found under Section 190.4 to be true:
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> (17) The murder was committed while the defendant was engaged in, or was an accomplice in, the commission of, attempted commission of, or the immediate flight after committing, or attempting to commit, the following felonies:
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

/////

---

[2] The special circumstance was found true in petitioner's trial under subdivision (a) with the relevant penalty in subdivision (d). Cf. Lodged Doc. 3 at 7 (noting that subdivision (c), requiring intent to all, does not apply).

>       (G) Burglary in the first or second degree in
>       violation of Section 460.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
>       (d) Notwithstanding subdivision (c), every person, not the actual
>       killer, who, with reckless indifference to human life and as a major
>       participant, aids, abets, counsels, commands, induces, solicits,
>       requests, or assists in the commission of a felony enumerated in
>       paragraph (17) of subdivision (a) which results in the death of
>       some person or persons, and who is found guilty of murder in the
>       first degree therefor, shall be punished by death or imprisonment in
>       the state prison for life without the possibility of parole if a special
>       circumstance enumerated in paragraph (17) of subdivision (a) has
>       been found to be true under Section 190.4.

Cal. Penal Code § 190.2(a)(17)(G), (d).

To find the burglary-murder special circumstance true as to a defendant who is not the actual killer, the prosecution must prove two substantive elements beyond a reasonable doubt: that defendant took part in the commission of a burglary while acting (1) "with reckless indifference to human life" and (2) "as a major participant." See Cal. Penal Code § 190.2(d). The state court of appeal analyzed the sufficiency of the evidence to establish each of these elements separately.

As to the sufficiency of the evidence to establish the "reckless indifference" element, the state court found:

> CALJIC No. 8.80.1 defines reckless indifference in terms of knowledge of grave risk. Defendant's claim that there was insufficient evidence of reckless indifference is effectively a claim that there was insufficient evidence he *knew or was aware that his acts involved a grave risk of death to an innocent human being.* This claim has no merit.
>
> The deployment of a gun in a criminal endeavor magnifies the risk that the victim will be seriously injured or killed. "[M]urder is generally found to be a reasonably foreseeable result of a plan to commit robbery and/or burglary despite its contingent and less than certain potential."
>
> In his police interview, defendant admitted that he knew Craver planned to do a home invasion burglary or robbery in the early morning hours in order to obtain a "nice amount" of marijuana. Defendant admitted that he saw Craver carrying a gun just before

7

> Craver entered the apartment. Defendant also admitted that he heard three shots fired in rapid succession, and that, when he heard the shots, he "knew the person probably was dead" or "had to be dead." This was a recognition that this home invasion burglary involved a grave risk of death.
>
> Because deployment of a gun magnifies the risk of death, and murder is a generally foreseeable result of robbery, the jury was not required to draw the factually unsupported and inherently improbable conclusion that defendant had been unaware of the risk until the moment he heard the shots. Rather, the jury could reasonably deduce from the evidence that defendant was sufficiently aware of the risk the robbery posed to human life. Under CALJIC No. 8.80.1, the jury could find that defendant acted with reckless indifference to human life.

Lodged Doc. 3 at 7-10 (emphasis in original; internal references and citations omitted).

Under California law, as the state appellate court recognized, to establish "reckless indifference" for the purposes of Penal Code § 190.2(d), the prosecution had to have proved that petitioner's actions or statements showed he was subjectively aware of the grave risk to human life posed by participation in the underlying felony. People v. Estrada, 11 Cal. 4th 568, 577 (1995). The evidence at petitioner's trial showed petitioner admitted he was aware of the plan to steal a "nice amount" of marijuana the morning before the plan was carried out. RT 417; CT 219-221. Petitioner saw a gun in the possession of one of his accomplices and yet proceeded to follow that accomplice into a residential dwelling in the middle of the night. CT 213, 245-246. The state court reasonably applied these facts to find that a rational trier of fact could conclude beyond a reasonable doubt that the defendant's actions exhibited a "reckless indifference to human life."

In addressing whether the evidence was sufficient to establish that petitioner was a "major participant," the court of appeal wrote:

> "The phrase 'major participant' is commonly understood and is not used in a technical sense peculiar to the law. The common meaning of 'major' includes 'notable or conspicuous in effect or scope' and 'one of the larger or more important members or units of a kind or group.'"

/////

> Defendant was one of three participants in the crime. He was one of two participants who drove a car to the scene and one of two who entered the victim's apartment. Defendant claimed that he entered right after Craver, who had entered first. Defendant admitted that the shots were fired not more than 30 seconds after he entered the apartment. He and Craver fled after the shots were fired and no contraband was obtained. He admitted selling marijuana in Sacramento after the incident, thus illustrating his motive in trying to acquire marijuana from the victim.
>
> The jury could deduce that defendant was one of the most important members of his group in that he was the person most likely to carry out the plot's objective, the gathering up and carrying away of marijuana, while his armed coparticipant fended off any residents or other persons who happened to be present. Contrary to defendant's argument, neither the evidence nor the jury's rejection of the robbery-murder special circumstance reasonably suggested that the marijuana could be obtained entirely "by stealth," without encountering any opposition or resistance.

Lodged Doc. 3 at 9-10 (internal references and citations omitted).

The phrase "major participant" within the meaning of Penal Code 190.2(d) indeed has not been accorded any special meaning by California courts. See People v. Proby, 60 Cal. App. 4th 922, 930-31 (Cal. App. 3d Dist. 1998). The jury instructions at trial did not define "major participant." See RT 482. The jury thus is presumed to have weighed the evidence using the common meaning of the word "major," consistent with state law. The court of appeal reasonably concluded, in light of the facts contained in the trial record, that a rational trier of fact could find the element of "major participant" beyond a reasonable doubt.

Taking into account all of the above, the Third District Court of Appeal's decision is not objectively unreasonable in applying clearly established federal law in its analysis as to whether the evidence was sufficient to find the burglary-murder special circumstance true as to petitioner. Relief on this ground is precluded by AEDPA.

IV. Denial Of Request To Modify Jury Instruction

Petitioner next challenges the trial court's denial of his request to modify CALJIC 8.81.17, which instructed the jury on two aspects of the burglary-murder and robbery-murder special circumstances -- the timing and the purpose of murder. Pet. at 5 (ground two).

One of petitioner's co-defendants requested two additions to the instruction. RT 452-455. The first addition would have elaborated on the provision that the special circumstance is not established if the attempted robbery or burglary was merely incidental to the commission of the murder. CT 129-133.[3] The second would have added three more issues to CALJIC 8.81.7: whether defendant was the actual killer, whether he was not the killer but intended to kill, and whether he was not the killer but acted with reckless indifference as a major participant. CT 88-90. These issues were covered in a separate instruction based on CALJIC 8.80.1. RT 481-482; CT 427. The state court of appeal concluded that the requested instructions were properly refused on state law grounds. Lodged Doc. 3 at 11-16.

Habeas review of instructional errors is limited. The question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," not merely whether "the instruction is undesirable, erroneous, or even universally condemned." Cupp v. Naughten, 414 U.S. 141, 146-47 (1973). The burden is "especially heavy" for petitioner because "[a]n omission, or an incomplete instruction is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977). A single instruction is not viewed in isolation, but in the context of the overall charge. Cupp, 414 U.S. at 147.

---

[3] The full text of the first proposed addition read:

> To prove the burglary or attempted robbery special circumstance, the prosecution must prove beyond a reasonable doubt that the burglary or attempted robbery was done for the independent purpose of committing that felony rather than for the purpose of committing the homicide. If the defendant's primary purpose was to kill or if [he] committed the burglary or attempted robbery to facilitate or conceal the homicide, then there was no independent felonious purpose. If, from all of the evidence, you have a reasonable doubt that the defendant committed the burglary or attempted robbery for such independent felonious purpose, you must find the defendant not guilty of the burglary or attempted robbery special circumstance.

CT 129.

10

1    Petitioner's instructional error claim must fail, because petitioner has not
established he suffered prejudice as a result of the trial court's denial of the requested
modifications. The first modification was requested on the theory that co-defendant Craver's
intent that night was to commit homicide rather than robbery or burglary. RT 452-453.[4] The
language of that instruction was based on the testimony of Aguiar, the victim's roommate,[5] and
the videotaped statement of co-defendant Shelmire.[6] Even if the modification had been allowed,
the speculation that Craver had an ulterior motive to kill on that night as a reaction to a perceived
threat from Aguiar was not corroborated by any other piece of evidence considered by
petitioner's jury. Thus, it is unlikely the modification would in any way have changed the verdict
against petitioner.

As noted, the second requested modification would essentially have duplicated the
language found in a separate instruction. It is well established that juries are instructed to view
instructions given by the court not in isolation, but as a whole, and that juries are presumed to
follow instructions. Cupp, 414 U.S. at 146-47 (juries instructed to view instructions as a whole);
Aguilar v. Alexander, 125 F.3d 815, 820 (9th Cir. 1997) (juries presumed to follow
instructions). The omission of duplicative language would not have changed the outcome of the
verdict in petitioner's case.

Petitioner's claim of instructional error should be rejected.

/////

---

[4] At times during trial, counsel refers to Craver as "Munchie," his street name. RT 162-163.

[5] Aguiar testified that about two weeks before the incident, Craver arranged to purchase marijuana from Aguiar. Aguiar obtained a quarter of a pound of marijuana from Roberts and gave it to Craver in exchange for what was supposed to be $1,100. However, Aguiar later discovered that the money was counterfeit. Aguiar absorbed the loss and paid Roberts out of his own pocket. Aguiar then contacted a mutual friend of his and Craver's and asked where he could find Craver because Aguiar "wanted to make it right." RT 160-163, 172-174, 202-208.

[6] Petitioner's jury did not hear Shelmire's statement.

1 | V. Prosecutorial Misconduct

Petitioner's final claim for relief is that the prosecutor committed misconduct during closing argument. Pet. at 6 (ground three). One of the prosecutor's arguments in closing was that petitioner was fully aware of the full details of the plan for the evening of September 13, 2001, because he was friends with Craver aka Munchie. In the process of making this argument, the prosecutor made the following statements:

> You are not going to ask your friend you grew up with, "Tell me the details of what we are going to do. Tell me"?
>
> It is not believable. You are not going to go out and commit a crime with somebody without knowing more facts. You want details. You are going to ask questions, ask questions.
>
> There is only one way you wouldn't ask any questions. If Munchie says, "Be ready tonight," there is only one way you wouldn't ask questions and that is if you did it before.
>
> If you knew what the deal was, if somebody says, "Hey, be ready tonight," and you get all dressed in black, there is only one way you wouldn't ask questions ... if you had done this before.

RT 491. Defense counsel objected on the ground that the statements suggested petitioner had committed other uncharged crimes. RT 491-492. The trial judge overruled the objection and the prosecutor proceeded:

> When Defendant Craver called him, they talked about doing a robbery. That's why, later on, when he said, are you ready to do this, he knew what was what. They had a plan. And that was, they are not going to go out and commit a crime without talking about it. These are friends, friends.

RT 492-493.

The state court of appeal held that no prosecutorial misconduct occurred:

> The prosecutor's first comment, "there is only one way you wouldn't ask any questions and that is if you did *it* before," was ambiguous as to whether "it" was the asking of questions or the commission of prior crimes. His second comment, "there is only one way you wouldn't ask any questions ... if you had done *this* before," was equally ambiguous as to the meaning of "this." (Italics added.) Defense counsel properly objected to the

12

> argument, "if" it was "suggesting that there were other crimes." The trial court correctly responded that the prosecutor had not "said that necessarily." The prosecutor then resolved the ambiguity by explaining that he was referring to the conversation with Craver earlier in the day. "When Defendant Craver called him, they talked about doing a robbery. That's why, later on, when he said, are you ready to do this, he knew what was what."
>
> Defendant claims the prosecutor committed misconduct by suggesting that defendant "had committed uncharged, prior burglaries, and had the disposition to commit such break-ins on a regular basis." The claim fails because it overlooks both the ambiguity of the initial remarks and the prosecutor's resolution of the ambiguity in favor of a proper argument following trial counsel's objection. Following the prosecutor's clarification of his remarks, no reasonable juror would speculate that defendant and Craver had previously committed similar crimes. There was no misconduct.

Lodged Doc. 3 at 18-19.

A federal court on habeas corpus review must distinguish ordinary trial error of a prosecutor from the sort of egregious misconduct amounting to a constitutional denial of due process. Smith v. Phillips, 455 U.S. 209, 221 (1982). In the present case, the prosecutor's statements were at worst ambiguous. For the ambiguity to amount to prosecutorial misconduct, one would have to take the statements wholly out of the context of the prosecutor's argument, that petitioner must have asked questions about the details of the plan and thus have had full awareness of what he was getting into. Moreover, the prosecutor resolved any possible ambiguity after defense counsel objected. The state appellate court's conclusion that no prosecutorial misconduct occurred is sound and supported by the trial record. See Lodged Doc. 3 at 16-19.

Petitioner's claim that prosecutorial misconduct occurred does not present a violation of his federal or constitutional rights.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

/////

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 22, 2009.

_____
U.S. MAGISTRATE JUDGE

ar/2
jone1098.157